**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DING GU,<br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*,<br>*Defendants*. | Civil Action No. 25-4542 (RDM) |

**MEMORANDUM OPINION**

Proceeding *pro se*, Plaintiff Ding Gu brings this action under the Administrative Procedure Act ("APA") against the U.S. Department of the Treasury, the Secretary of the Treasury, the U.S. Department of Commerce, and the Secretary of Commerce. Dkt. 1. Plaintiff alleges (1) that he submitted a Petition for Rulemaking to the Departments of Treasury and Commerce in October 2025, requesting that Defendants adopt "a Balanced Free Trade Model with Quota System as a lawful alternative to tariff-based trade policy," (2) that Defendants had "a nondiscretionary duty to provide timely acknowledgment and a reasoned response to [his] petition," and (3) that "Defendants have failed to act, causing Plaintiff a concrete procedural and informational injury cognizable under Article III." *Id.* at 2. In Plaintiff's view, Defendants' failure to respond to his petition "constitutes agency inaction and unreasonable delay" under the APA. *Id.* at 4. Plaintiff requests that the Court "[d]eclare that Defendants have violated the APA; "[o]rder Defendants to acknowledge and respond to [his] Petition for Rulemaking by a date certain;" and "[r]etain jurisdiction to ensure compliance." *Id.* at 9.

Defendants move to dismiss on three grounds: First, they argue that Plaintiff has previously litigated whether he has standing to challenge Defendants' failure to respond to a similar petition; the Court dismissed that action for lack of Article III standing; and Plaintiff is now precluded from re-litigating that same issue. Dkt. 7 at 9–13. Second, they argue that, in any event, Plaintiff lacks standing to bring the claims at issue, because he has failed adequately to allege that he has suffered a concrete, particularized injury that is fairly traceable to Defendants' inaction. *Id.* at 13–15. Third, they argue that Plaintiff's § 706(1) claim fails as a matter of law, because he has not identified a discrete and mandatory duty to respond to his petition. *Id.* at 15–16. Shortly after Defendants moved to dismiss, Plaintiff filed a motion to expedite, arguing that every "day of delay" in responding to his petition "continues to deprive [him] of his statutory right to a reasoned agency response" to his petition. Dkt. 10 at 1.

For the reasons discussed below, the Court will **GRANT** Defendants' motion to dismiss. Dkt. 7, and will **DENY** Plaintiff's motion to expedite, Dkt. 10, as **MOOT**.

## I. BACKROUND

For purposes of resolving Defendants' motion to dismiss, the Court accepts Plaintiff's factual allegations as true. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015). The Court will also take judicial notice of proceedings in a similar case, *Gu v. U.S. Dep't of the Treasury*, No. 25-cv-2739 (hereinafter "*Gu I*"), which Plaintiff brought in August 2025, and which the Court dismissed in November 2025, *Gu I*, 2025 WL 3089260 (D.D.C. Nov. 5, 2025). The Court starts with Plaintiff's prior suit and then turns to the present case.

### A.

In October 2024, Plaintiff "sent several letters containing 'policy proposals' to now-President Donald Trump's personal residence in Palm Beach, Florida." *Id.* at *1. Those letters

included a proposal that the incoming Administration adopt a "'BFT Model' of free trade" in lieu of tariffs. *Id.* Subsequently, Plaintiff started to direct his proposal to the Secretaries of the Treasury and Commerce. *Id.* Most notably for present purposes, he sent a letter to the Secretary of Commerce "asking 'whether the Department of Commerce would consider reviewing [his BFT] model independently and offering a position—either publicly or through recommendation to the President." *Id.* He also requested an opportunity to meet with the Secretaries or their "senior trade policy staff to present [his] findings and data on the BFT Model." *Id.* He received no reply. *Id.*

Unsatisfied with this state of affairs, Plaintiff filed a petition for a writ of mandamus and filed a motion for temporary restraining order or preliminary injunction. His petition included four counts, the first two of which closely track his present claims. In Count I, he alleged that "Defendants have unlawfully withheld action by failing to respond to [his] petition as required by [the] APA," and in Count II, he alleged that "Defendants' refusal to consider Plaintiff's petition constitutes arbitrary and capricious agency action." *Gu I*, 25-cv-2739, Dkt. 1 at 4. Defendants, in turn, moved to dismiss the petition and opposed the motion for preliminary relief.

In a well-reasoned opinion, Judge Loren AliKhan granted Defendants' motion to dismiss for lack of jurisdiction and denied Plaintiff's motion for preliminary relief as moot. *Gu I*, 2025 WL 3089260, at *1-*5. She first concluded that Plaintiff lacked Article III standing to pursue his claims. *Id.* at 4*. Plaintiff raised three theories of standing, each of which she found lacked merit. Plaintiff's claim of procedural injury failed because procedural injury will not, alone, establish standing; a plaintiff challenging an agency's failure to comply with a procedural requirement must also allege (and eventually demonstrate) that he has suffered or is likely to suffer "a 'concrete [injury] apart from the procedural injury.'" *Id.* at *3 (quoting *Fund*

*Democracy, LLC v. Sec & Exch. Comm'n*, 278 F.3d 21, 28 (D.C. Cir. 2002)). His claim of "informational injury" failed as well. As Judge AliKhan explained, Plaintiff was not "seeking access to information held by Defendants," and, instead, was asking the Court "to compel Defendants to listen and respond to him." *Id.* And his standing based on an asserted economic injury failed because "it is well established that 'a "generalized grievance," no matter how sincere, is insufficient to confer standing,'" *id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)), and because, in any event, Plaintiff's alleged economic injury was not "fairly traceable" to the challenged action, *id.* at *4.

Unsatisfied with this result, Plaintiff moved for reconsideration, and Judge AliKhan denied that motion as well. *See Gu v. United States Dep't of Treasury*, 2025 WL 3687600 (D.D.C. Dec. 19, 2025). Among other things, Plaintiff argued that the Court "erred because it dismissed the case 'before [it] had an opportunity to consider' the formal petition for rulemaking he filed on October 9, 2025" and "that by submitting a petition for rulemaking to Defendants . . . before the court's dismissal . . . he 'cure[d] the jurisdictional defect identified in the Court's order.'" *Id.* at *1. Judge AliKhan was unpersuaded. She wrote:

> [T]he court has already considered and rejected this argument. In its memorandum opinion, the court explained that even though the APA guarantees a right to petition, the denial of a right to petition cannot independently confer Article III standing. ECF No. 25, at 5-6 (citing *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 433 (D.C. Cir. 2002)). What is more, although Dr. Gu maintains that the court failed to consider his petition for rulemaking, the court directly addressed that petition as well. Id. at 11 n.3 (explaining that if Dr. Gu sought to establish jurisdiction based on facts that postdated his complaint, the proper course of action would be to file a new lawsuit).

*Id.*

Plaintiff then filed a motion for leave to file an amended complaint, which sought to challenge Defendants' failure to consider his October 9, 2025, petition. *Gu I*, No. 25-cv-2739,

Dkt. 32. Judge AliKhan denied that motion, explaining that after a court has entered final judgment, it will only grant a motion for leave to amend if the movant can satisfy the "more stringent standard for setting aside that judgment." *Gu I*, No. 25-cv-2739, Minute Order (Dec. 30, 2025) (citation modified). Because Plaintiff failed to satisfy that standard, Judge AliKhan declined to permit Plaintiff to amend his complaint.

**B.**

Ten days later, Plaintiff filed the instant suit, which was initially assigned to Judge AliKhan as a related case but that was reassigned after Judge AliKhan concluded that the related-case standard was not satisfied. *See* Dkt. 1; Dkt. 2; Minute Order (Jan. 6, 2026). Although both cases involve the same Plaintiff and Defendants, and although the subject matter is similar, Judge AliKhan noted that the cases do not relate to the "same subject matter" within the meaning of related-case rule: As she explained, "while the first case concerned Plaintiff's attempts to message federal officials through various letters and messages, the second case concerns a petition for rulemaking that postdates the first case." Minute Order (Jan. 6, 2026).

The petition at issue here is the same one that Plaintiff sought to add to *Gu I* in his unsuccessful motion for leave to amend. As Gu previously sought to allege, and now alleges, he "submitted a written Petition for Rulemaking to [the Departments of] Treasury and Commerce" on October 9, 2025. Dkt. 1 at 3 (Compl. ¶ 14). "The Petition requested" that the Departments initiate a "rulemaking to evaluate and adopt a Balance Free Trade Model with Quota System, designed to address persistent trade deficits without imposing tariffs on U.S. consumers." *Id.* (Compl. ¶ 15). Neither Department, however, has "acknowledge[d] receipt of the Petition," "provide[d] any written response," or "initiate[d] [a] rulemaking or den[ied] the Petition with" a reasoned explanation. *Id.* at 4 (Compl. ¶ 19). In Plaintiff's view, this "inaction and unreasonable

delay" violates the APA's "requirement[s] of 'prompt notice'" and reasoned decision-making. Id. (Compl. ¶¶ 20-21).

As in *Gu I*, Defendants timely moved to dismiss, Dkt. 7, and Gu opposed that motion, Dkt. 9, Dkt. 13.

## II. ANALYSIS

Defendants raise three arguments. First, they maintain that Plaintiff's current claims are barred by the doctrine of issue preclusion because they seek to re-litigate this Court's conclusion in *Gu I* that Plaintiff lacks standing to challenge the Department's failure to act on his proposal. Second, they argue that, in any event, Plaintiff lacks standing for the same reasons given in *Gu I*. Third, they argue that Plaintiff has failed to state a claim under the APA because he has failed to identify a discrete and mandatory agency duty to act.

### A.

Reasonable arguments might be raised on either side of the question whether Plaintiff's current claims are barred by issue preclusion. The cases, to be sure, involve the same parties and similar questions of law and fact. Plaintiff responds, however, by noting that Judge AliKhan concluded that the cases are not related; as she explained, *Gu I* involved Plaintiff's challenge to Defendants' failure to respond to his letters to President Trump and the Secretaries, while this case challenges Defendants' failure to respond to Plaintiffs' "formal Petition for Rulemaking." Dkt. 1 at 1 (Compl. ¶ 1). The letters and "formal Petition" ask for the same government action, they urge the government to adopt the same BFT Model, and there is no reason to believe that the Court's standing analysis will differ in this case from the Court's analysis in *Gu I*. But Plaintiff is correct that the challenged agency inaction is not the same: in *Gu I*, Plaintiff

challenged Defendant's failure to respond to his letters, and in this case, he challenges their failure to respond to his petition.

The question of issue preclusion, however, is complicated by the fact that Judge AliKhan denied Plaintiff's motion for reconsideration in *Gu I* on grounds that more directly implicate Plaintiff's current claims. In moving for reconsideration, Plaintiff invoked his October 9, 2025, petition, and argued that by submitting this petition, he cured the jurisdictional defect identified in the Court's decision dismissing his mandamus petition. *Gu I*, 2025 WL 3687600, at *1. On Gu's telling, by filing the petition, he established a nondiscretionary duty for the agency to act. *Id*. Judge AliKhan was unpersuaded and explained that she had "already considered and rejected this argument" and had "explained that even though the APA guarantees a right to petition, the denial of a right to petition cannot independently confer Article III standing." *Id.* She added, moreover, that Gu's contention that she had "failed to consider his petition for rulemaking" was incorrect: rather, "the court directly addressed that petition as well" and explained that, to the extent that Gu seeks to challenge that petition, he would need to bring a new suit to do so. *Id.*

This discussion arguably cuts both ways. On the one hand, Judge AliKhan considered Plaintiff's contention that he had standing because he filed a "formal Petition" and concluded, as she explained in her earlier opinion, that procedural injury, standing alone, cannot satisfy Article III. *Id.* But she also made clear that *Gu I* provided the wrong vehicle to challenge the result of a petition filed after the litigation was commenced. *Id.*

Ultimately, the Court need not decide whether *Gu I* precludes Plaintiff from maintaining that he has standing in this case because *Gu I*'s reasoning is both unassailable and dispositive for present purposes. That is, whether *Gu I* is binding or not, Plaintiff lacks Article III standing to pursue his claims here, which are indistinguishable in all relevant respects.

**B.**

"The 'irreducible constitutional minimum of standing contains three elements': '(1) injury-in-fact, (2) causation, and (3) redressability.'" *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 48 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). First, under the injury-in-fact element, the injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Second, under the causation element, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Id.* at 560–61. Courts must therefore determine "whether it is substantially probable that the challenged acts of the defendant . . . will cause the particularized injury of the plaintiff." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citations omitted). Finally, under the redressability element, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" of the court. *Lujan*, 504 U.S. at 561. A plaintiff bears the burden of demonstrating its standing at every stage of the litigation, *see id.*, and, at the motion to dismiss stage, must allege facts sufficient to support standing as to each claim asserted, *see Ali v Al-Nahyan*, 808 F. Supp. 3d 88, 114–15 (D.D.C. 2025).

Here, Plaintiff's claim of standing faulters at the first step: he fails to allege that he has suffered a cognizable injury-in-fact. As in *Gu I*, Plaintiff starts by arguing that he has suffered "a [c]oncrete and [p]articularized [p]rocedural [i]njury." Dkt. 9 at 4. He argues, in short, that he was entitled to receive notice that the Departments had received his petition, and was entitled to a reasoned response to his proposal. *Id.* at 4-5. On Plaintiff's telling, these allegations suffice to show that his asserted injury ("denial of a legally protected procedural entitlement") was concrete and particularized ("the obligation arose from Plaintiff's own petition"). *Id.* at 5. But

that contention misunderstands the standard governing procedural injuries. As the Supreme Court has repeatedly explained, "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). To be sure, the imminence and redressability requirements are relaxed in procedural injury cases, *see Growth Energy v. EPA*, 5 F.4th 1, 27 (D.C. Cir. 2021), but that is not Plaintiff's problem. His problem is that a procedural injury, standing alone, will not suffice.

Plaintiff responds by arguing that his asserted injury is not "generalized." Dkt. 9 at 6. But that, again, misunderstands the law and misunderstands the problem with his complaint. In *Gu I*, Plaintiff argued that, as a consumer and small-business operator, he was likely to suffer economic injury due to the higher prices resulting from unnecessary tariffs. *Gu I*, 2025 WL 3089260, at *3. In response, the Court explained that "his concerns about price increases [were] generalized" and thus insufficient "to confer Article III standing." *Id.* In this case, Plaintiff does not assert an economic injury of this kind, and, if he did, the argument would fail for the reasons provided in *Gu I*. Plaintiff mixes apples and oranges, however, in attempting to remedy his failure to identify any concrete injury in support of his claim of procedural injury by arguing that the procedural injury is unique to him. The point is that a bare procedural injury will not suffice, regardless of whether that bare procedural injury is particularized.

Finally, although Plaintiff does not press any alternative theories of Article III standing in this case, he does assert—with elaboration—that he does not intend to "concede any standing argument," including any argument premised on an "informational injury." Dkt. 13 at 2. To the

extent he intends to re-assert the argument regarding informational injury that he pressed in *Gu I*, the argument fails for the reasons provided in that case. *See Gu I*, 2025 WL 3089260, at *3.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion, Dkt. 7, and will **DISMISS** Plaintiff's complaint for lack of Article III standing. The Court will **DENY** Plaintiff's motion to expedite, Dkt. 10, as **MOOT**.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 12, 2026